## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ALFRED MCZEAL, Jr.,                    :

          **Appellant**        :    **CIVIL ACTION NO. 3:25-cv-818**

   v.                                 :         **(JUDGE MANNION)**

PAIGE KILBURN,                         :

          **Appellee**         :

### MEMORANDUM

Presently before the court is Appellant Alfred McZeal, Jr.'s (hereinafter "McZeal") appeal of the Bankruptcy Court's April 25, 2025, order granting Appellee Paige Kilburn's (hereinafter "Kilburn") motion for relief from an automatic stay and co-debtor stay pursuant to 11 U.S.C. §§362(d) and 1301(c). (**Doc. 1**). The appeal centers around an ownership dispute over a home in California between McZeal and Kilburn, and fraudulent amended schedules in the Bankruptcy Court suggesting that Debtor Geddes Sean Schubert Gibbs (hereinafter "Gibbs") has an ownership interest as well, which he denies. The matter has been fully briefed and is ripe for disposition. For the reasons stated herein, and following thorough review of the record below, McZeal's appeal of the order of the Bankruptcy Court will be **DENIED**.

## I.    BACKGROUND

### A. The Laburnum Property and related California Litigation

On June 26, 2023, Kilburn purchased a house located at 13152 Laburnum Drive, Tustin, CA 92810 (hereinafter "Laburnum Property"). (Doc. 16-4 at 4). A deed upon sale evidencing the purchase was recorded in the official records of Orange County, California. *Id.* at 2-6.

Subsequently, on October 26, 2023, Kilburn filed an unlawful detainer action against the former owners, Mr. and Mrs. Del and Dottie Patterson,[1] and all persons claiming any right to possession of the Laburnum Property in California state court.[2] *Id.* at 31-50. McZeal, asserting an interest, then removed the action to the U.S. District Court for the Central District of California, (Doc. 16-6 at 187), before it was remanded back to state court, (Doc. 16-7 at 2). On June 17, 2024, it was again removed and later remanded. (Doc. 16-7 at 27-28). That case is still pending.

Following the filing of the unlawful detainer action, McZeal, on January 9, 2024, brought a separate action in the Central District of California alleging a litany of claims relating to the Laburnum Property against Kilburn and

---

[1] These names are aliases. (Doc. 16-4 at 36).

[2] *Kilburn v. Patterson, et al.*, Case No. 30-2023-01360427-CL-UD-CJC (Cal. Sup. Ct., Orange Cnty.).

- 2 -

others, including civil rights violations, illegal foreclosure, and racketeering.[3] (Doc. 16-7 at 4-15). That case is also still pending.

### B. *In re Geddes Sean Schubert Gibbs*: Amended Schedules and Consequent Proceedings

On March 6, 2024, fraudulent amended schedules were filed in the Bankruptcy Court for the Middle District of Pennsylvania in the case of *In re Geddes Sean Schubert Gibbs*.[4] (Doc. 16-2 at 3). The amended schedules stated that Gibbs had an equity ownership interest in the Laburnum Property as an investment property as an "equity holder in Houston Real Estate Business Trust;" that Kilburn, the sheriff of Orange County, and Kilburn's attorney held disputed non-priority unsecured claims against Gibbs and his estate; and that McZeal was a co-debtor with respect to the Laburnum Property, i.e., he had an ownership interest as well, on account of his purported role as trustee of the Houston Real Estate Business Trust. (Docs. 16 at 11, 16-2 at 94, 104-105, 110). That same day, McZeal filed a claim of right of possession to the property in the ongoing state court unlawful detainer action, alleging that he occupied the Laburnum Property and that he is the owner. (Doc. 16-5 at 2).

---

[3] *McZeal v. City of Tustin, et al.*, Case No. 8:24-cv-00088-RGK-PD (C.D. Ca.).

[4] Case No. 5:24-bk-00457 (M.D.Pa.).

Five days later, on March 11, 2024, another amended schedule was filed, again asserting that McZeal was a co-debtor with respect to the Laburnum Property. (Doc. 16-2 at 129). That same day, McZeal filed a notice of stay in the California state court unlawful detainer action claiming that automatic and co-debtor stays in the bankruptcy case protect him. (Doc. 16-5 at 17-21).

Gibbs denies that he filed the fraudulent amended schedules, and claims that he has, in fact, no ownership interest in the Laburnum Property.[5] (Doc. 16-3 at 7-10). Furthermore, while the fraudulent filings benefitted nobody besides McZeal, and the timing of his actions with respect to the California state court case conveniently coincided with the fraudulent filings, the court notes that McZeal also denies that he filed the amended schedules.[6] (Doc. 16-3 at 100-101). Judge Mark Conway, presiding over the

---

[5] Gibbs and McZeal appear to be acquaintances. In fact, there was a previous case in the Bankruptcy Court, Case No. 5:23-00406-MJC, involving Gibbs filing for bankruptcy and McZeal inserting himself into the litigation, even claiming an ownership interest in Gibbs' home, which "didn't seem to ring true" to Judge Conway. (Doc. 16-3 at 55). Ultimately, that litigation resulted in McZeal being sanctioned for $75,000 by Judge Conway. Furthermore, Gibbs' attorney, Mr. J. Zac Christman, has stated "I think [Gibbs] had . . . asked Mr. McZeal for assistance . . . with, basically, some strange theories that might allow him to save his home without having to cure all the arrears to it." (Doc. 16-3 at 55).

[6] The court also notes that McZeal has a reputation in certain courts as a litigant. In both the United States District Court for the Southern District of
*(footnote continued on next page)*

- 4 -

Bankruptcy Court case, expressed great concern that there were fraudulent filings in his court, and referred the matter to the Department of Justice for investigation. *Id.* at 60.

### C. Bankruptcy Judge lifts Stays

On April 24, 2025, a hearing was held before Judge Conway regarding Kilburn's motion for relief from automatic and co-debtor stays, as well as her motion for judicial notice, which established a factual basis for seeking relief. (Doc. 9-11). The stays were in effect due to the fraudulent amended

---

Texas and for the Western District of Louisiana, as well as in the California state court system, McZeal has been labeled a "vexatious litigant," meaning that those courts have found that he has initiated frivolous legal proceedings against others for malicious purposes. *See McZeal v. MidSouth Nat'l Bank N.A.*, 2017 WL 1484546, at *2 (W.D.La. 2017), report and recommendation adopted, 2017 WL 1484997 (W.D.La. 2017); *see also McZeal v. Fastmobile, Inc.*, 2006 WL 801175, at *1 (S.D. Tex. 2006), aff'd, 219 F.App'x 988 (Fed. Cir. 2007); *see also* Vexatious Litigants List dated as of October 1, 2025, maintained by the Judicial Council of California, https://courts. ca.gov/system/files/file/vexlit.pdf. In 2023, the Central District of California compiled an extensive but not exhaustive list of McZeal's lawsuits across the country and noted "McZeal's pattern of filing frivolous lawsuits alleging near identical claims against often the same entities in various jurisdictions." *McZeal v. HSBC Bank USA*, 2023 WL 5748769, at *3 (C.D. Cal. 2023).

Furthermore, McZeal was sanctioned for $75,000 in the previous *Gibbs* bankruptcy case for filing a complaint that the court deemed "another in a long list of frivolous suits designed to harass these particular defendants in this proceeding." (Doc. 16-8 at 44-45).

Finally, in the present case, Judge Conway warned McZeal that "I'm inclined, based upon [the previous bankruptcy case] in having to deal with you and the frivolous arguments that you made in that case, to entertain if it came before me, a motion for sanctions." (Doc. 16-3 at 139).

schedules and prevented both the California state court unlawful detainer case and the California federal court case brought by McZeal from proceeding. Judge Conway first ruled on the motion for judicial notice, which sought the court to admit judicial records from the ongoing California state and federal court cases, as well as certified deed records in Orange County, California. *Id.* at 7. Judge Conway granted the motion and stated on the record that:

> Under Rule 201 [of the Federal Rules of Evidence], the court may consider matters of which they may take judicial notice. A court may take judicial notice of a fact that is generally known within the Trial Court's territorial jurisdiction, number one. Or, number two, can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. That's right out of Federal Rule of Evidence 201(b). Additionally, a court must take notice of a fact if a party requests it and the court is supplied with the necessary information. That's 201(c)(2). Further, a court cannot take judicial notice of findings of fact of other courts, but the fact that a judicial action was taken is indisputable and is, therefore, amenable to judicial notice. Citing to Gray Rudd v. Beverly Enterprises, a Fifth Circuit 2004 case. But I think the law is pretty clear on that. I reviewed Exhibits 1 through 37. They seem to be judicial records, recorded documents – all of

which are not subject to dispute. Therefore, I'm granting the
motion and will take judicial notice of those documents.

*Id.* at 9-10. He then turned to the motion for relief from the stays.

Counsel for Kilburn utilized the judicially noticed documents to
demonstrate that: (1) Kilburn has a prima facie claim of ownership to the
Laburnum Property, (2) that ownership is contested, and (3) that the
automatic stay has been implicated by the notice of stay in the California
state unlawful detainer action. *Id.* at 10-13. Kilburn's motion was unopposed
by Gibbs, as Gibbs acknowledged that he had no ownership interest in the
Laburnum Property.[7] (Doc. 16-3 at 7-10). McZeal, on the other hand, argued,
among other things, that Kilburn did not give the court "the other deeds that
cancelled her deed and cancelled any other deed filed before that deed and
this is what gives her no right to the property." *Id.* at 17. Judge Conway noted
in response that:

> This is a bankruptcy court in Wilkes-Barre, Pennsylvania. The
> debtor is from Stroudsburg, Pennsylvania which is about 45
> minutes from here. Debtor's counsel is telling me that the
> debtor has little or no interest in this property. His plan makes
> no mention of this – his Chapter 13 plan makes no mention of

---

[7] His counsel noted, however, that "we wouldn't deny that perhaps he
made a small investment in the Houston Business Real Estate Trust." (Doc.
9-11 at 14).

this property. So, it does not appear as though the property is
relevant or necessary to the reorganization to this debtor.

*Id.* at 17-18. He further questioned McZeal: "why should I not grant relief to
allow Ms. Kilburn to pursue whatever rights she has with respect to a
property located in California?" *Id.* at 18. Finding McZeal's answer
unsatisfactory, Judge Conway concluded:

> Based upon everything I've heard, based upon what appears
> to be unauthorized documents filed in this case and certainly
> based upon the response of the debtor that was filed at Docket
> 108 on April 19, 2025, where the debtor is consenting to relief
> and also the fact that there's a plan, a proposed plan, I think
> several plans that have been filed in this case making no
> mention of the property in California, I can't imagine it having
> any relevance or necessity to the debtor's reorganization in
> this matter, I'm granting relief as requested by Ms. Kilburn.
> Given the fact that the property and whatever issues seem to
> be business related and not personal in any way, I'm not sure
> if the co-debtor's stay would even apply. But to the extent it
> does, I'm granting Ms. Kilburn relief as to any co-debtor stay
> relating to the debtor's interest, to the extent the debtor has an
> interest in the California property.

*Id.* at 19-20.

On April 25, 2025, the day after the hearing, Judge Conway issued an
order granting Kilburn's motion for relief from the automatic stay and co-

debtor stay pursuant to 11 U.S.C. §§362(d) and 1301(c). (Doc. 1 at 3-4). With the lifting of these stays, McZeal was no longer protected from eviction as a "co-debtor" because of the fraudulently filed amended schedules.

### D. McZeal's Appeal

McZeal appealed, *pro se*, the Bankruptcy Court's order granting relief from the automatic and co-debtor stays on May 8, 2025. (Doc. 1). On May 15, 2025, this court sent a letter to the parties informing them of the procedures and deadlines for the appeal. (Doc. 3). In the letter, it was noted that:

> Within **fourteen (14) days** of the filing of the Notice of Appeal, the appellant must file with the bankruptcy clerk and serve on the appellee a "designation of the items to be included in the record on appeal and a statement of the issues to be presented." Federal Rule of Bankruptcy Procedure 8018(a) provides that the appellant must serve and file a brief within **thirty (30) days** after entry of the appeal on the docket. Pursuant to Rule 8018(b)(1), the appellant must serve and file with its principal brief excerpts of the record as an appendix. It must contain the following:
>
> (A) the relevant entries in the bankruptcy docket;
> (B) the complaint and answer, or other equivalent filings;
> (C) the judgment, order, or decree from which the appeal is taken;

> (D) any other orders, pleadings, jury instructions, findings,
>      conclusions, or opinions relevant to the appeal;
>
> (E) the notice of appeal; and
>
> (F) any relevant transcript or portion of it.

(Doc. 3).

Despite a deadline of May 22, 2025, and this court's June 13, 2025,
docket entry stating:

> Notice of Appeal in the above-referenced matter was filed on
> 5/8/2025 and transmitted to District Court on 5/9/2025. To date
> the times set forth in Fed. R. Bank. P. 8009 and 8010 have
> passed and no further filings have been received in connection
> with the appeal. Accordingly, the record is being transmitted
> based on the submissions filed as of today's date[,]

McZeal never formally submitted a designation of items to be included in the
record on appeal. Though, he did file an appendix to his principal brief on
June 18, 2025, (Doc. 6), which was then amended on June 23, 2025, and
again on July 3, 2025, (Doc. 7). Furthermore, despite a deadline of June 7,
2025, McZeal did not submit his principal brief until June 13, 2025, (Doc. 4),
which he then amended on June 16, 2025, (Doc. 5).

On June 27, 2025, Judge Conway granted Kilburn's motion for leave
to supplement the record on appeal, (Doc. 16-3 at 258), finding that "the
Record in the Appeal omits material items in contravention of Bankruptcy

- 10 -

Rule 8009, improperly designates certain items that should be struck from the Record and does not accurately disclose what occurred in Bankruptcy Court at the hearing on the Stay Motion on April 24, 2025." (Doc. 8 at 1).

Subsequently Kilburn submitted her designated record on July 2, 2025. (Doc. 9). She made a subsequent addition to the designated record, (Doc. 12), as well as designations with respect to particular exhibits, (Docs. 13, 14, and 15), on July 14, 2025. That same day, Kilburn submitted her brief in opposition to McZeal's appeal. (Doc. 16).

On July 23, 2025, McZeal filed a motion to set aside the Bankruptcy Court order granting supplementation. (Doc. 17). The court denied this motion on October 6, 2025. (Doc. 21).

McZeal never filed a reply brief to Kilburn's brief in opposition, and the time to do so has passed. The court now considers the present appeal.

## II.    LEGAL STANDARD

This court has appellate jurisdiction over this appeal of the Bankruptcy Court's order pursuant to 28 U.S.C. §158(a)(1) (The district court has "jurisdiction to hear appeals from final judgments, orders, and decrees" of a bankruptcy court). *See In re Michael*, 699 F.3d 305, 308 n.2 (3d Cir. 2012) ("[A] district court sits as an appellate court to review a bankruptcy court"). When a district court sits as an appellate court over a final order of a

bankruptcy court, it reviews the bankruptcy court's legal determinations *de novo*, its findings of fact for clear error, and its exercise of discretion for abuse of discretion. *In re Trans World Airlines, Inc.*, 145 F.3d 124, 141 (3d Cir. 1998).

When reviewing for clear error, "it does not matter that this Court 'would have reached a different conclusion' if presented with the matter in the first instance." *Campbell v. Conway*, 611 B.R. 38, 43 (M.D.Pa. 2020) (quoting *Prusky v. ReliaStar Life Ins.*, 532 F.3d 252, 258 (3d Cir. 2008)). The court must accept the Bankruptcy Court's factual findings unless it is "left with the definite and firm conviction that a mistake has been committed." *Id.*

This court reviews the Bankruptcy Court's evidentiary rulings for abuse of discretion but exercises plenary review to the extent the rulings are based on a legally permissible interpretation of the Federal Rules of Evidence. *See id.* (citing *United States v. Fattah*, 914 F.3d 112, 177 (3d Cir. 2019); *see also United States v. Reilly*, 33 F.3d 1397, 1410 (3d Cir. 1994) (discussing appellate standard of review in the context of a hearsay ruling).

## III.    DISCUSSION

### a. Despite filing his principal brief late, McZeal's appeal will not be dismissed.

Under Rule 8018(a)(4) of the Federal Rules of Bankruptcy Procedure, "If an appellant fails to file a brief on time . . . the district court . . . may—on its own after notice or on the appellee's motion—dismiss the appeal." Here, the deadline for McZeal's brief was June 7, 2025, but he did not submit his brief until June 13, 2025. (Doc. 4). The court informed the parties of filing deadlines in its May 15, 2025, letter to the parties. (Doc. 3). In that letter, the court also advised that "Counsel, as well as parties acting without counsel, are expected to comply with Rules 8001, *et seq.*, and are specifically advised that they may not enter into any agreements for extensions of time without court approval." *Id.* The court never approved any request for an extension. The court also informed McZeal of his failure to timely file his designated record in a June 13, 2025, docket entry stating:

> Notice of Appeal in the above-referenced matter was filed on 5/8/2025 and transmitted to District Court on 5/9/2025. To date the times set forth in Fed. R. Bank. P. 8009 and 8010 have passed and no further filings have been received in connection with the appeal. Accordingly, the record is being transmitted based on the submissions filed as of today's date[,]

McZeal filed his brief later that same day.

The Third Circuit "has directed district courts to balance the *Poulis* factors to determine whether dismissal of an appeal is appropriate when the appellant fails to timely file his or her brief." *McGuckin v. Gardner*, 665 B.R. 120, 126 (E.D.Pa. 2024) (quoting *Goldsmith v. Pittsburgh Mercy Health Sys., Inc.*, 2020 WL 4450370, at *3 (W.D.Pa. 2020) (citing *In re New Century TRS Holdings, Inc.*, 619 F.App'x 46 (3d Cir. 2015))). The six factors to be considered are: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *McGuckin*, 665 B.R. at 126 (quoting *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (citing *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984))).

With respect to the first factor—extent of the party's personal responsibility—it is a "question of whether the party himself caused a delay as opposed to whether counsel for the party is responsible." *McGuckin*, 665 B.R. at 127 (quoting *Vittas v. Brooks Bros. Inc., Grp.*, 2017 WL 6316633, at

*2 (D.N.J. 2017). Here, McZeal represents himself *pro se*. Furthermore, he is an experienced *pro se* litigant. As an experienced *pro se* litigant, he is presumably familiar with filing deadlines. Thus, McZeal is fully responsible for the delay.

Turning to the second factor—prejudice to the adversary—Kilburn was prejudiced by McZeal's failure to comply with deadlines. She bought the Laburnum Property over two years ago. Any and all litigation involving it prolongs her ability to occupy the premises. Furthermore, the longer litigation continues, the more attorney's fees she becomes responsible for. McZeal's failure to comply with the deadline for the designated record also necessitated that Kilburn petition the court to amend the record, and to submit her own extensive record, which required time and money. Thus, Kilburn was prejudiced.

Regarding the third factor—history of dilatoriness—the court does not note any other untimely filings in this court. However, the court notes McZeal's history of frivolous and vexatious litigation, perhaps, at times, aimed at delay.[8] *See McZeal v. MidSouth Nat'l Bank N.A.*, 2017 WL 1484546, at *2 (W.D.La. 2017), report and recommendation adopted, 2017 WL 1484997 (W.D.La. 2017); *see also McZeal v. Fastmobile, Inc.*, 2006 WL

---

[8] *See* fn. 6.

801175, at *1 (S.D. Tex. 2006), aff'd, 219 F.App'x 988 (Fed. Cir. 2007); *see also* Vexatious Litigants List dated as of October 1, 2025, maintained by the Judicial Council of California, https://courts.ca.gov/system/files/file/vexlit.pdf.

As to the fourth factor—whether the conduct was willful or in bad faith— the court has no proof that McZeal's conduct, with respect to the late filing in particular, was willful or in bad faith. However, failure to comply with the filing deadline as well as the deadline for submission of his designated record in conjunction with McZeal's history as a vexatious litigant, and the appearance that these proceedings in the Bankruptcy Court and this court serve as delay tactics with respect to the California unlawful detainer action, raise some concern for the court. Still, there is not sufficient evidence to conclude that McZeal filed his *brief* late willfully or in bad faith. In fact, McZeal's filing of his brief the same day that the court notified him that he missed deadlines strikes the court as evidence that he may have simply forgotten to file.

Regarding the fifth factor—effectiveness of sanctions other than dismissal—dismissal "must be a sanction of last, not first, resort." *Poulis*, 747 F.2d at 869. This court has not issued any sanctions during the present appeal. However, the court notes that it appears that alternative sanctions are generally not persuasive to McZeal. He is on numerous vexatious litigants lists; yet, he still continues to engage in meritless and frivolous

- 16 -

litigation. Furthermore, Judge Conway did impose sanctions on McZeal in the previous *Gibbs* bankruptcy case in the amount of $75,000. In McZeal's own words, more than a year after those sanctions were imposed: "those judgments are boring to me. I haven't had a chance to react to them yet." (Doc. 16-3 at 144). McZeal's blatant disregard for sanctions imposed against him, going so far as to declare sanctions issued by a sitting federal bankruptcy judge "boring," call into question the effectiveness of alternative sanctions. Still, this court has not imposed sanctions on McZeal. Therefore, dismissing the appeal would be premature.

Finally, with respect to the sixth factor, there is no merit to McZeal's appeal, nor chance of success. The appeal is frivolous and appears to the court to have been filed in bad faith. Indeed, it arrives before the court pursuant to fraudulently filed amended schedules. That McZeal even brings this appeal, given that Gibbs has denied any ownership interest in the Laburnum Property and that, taking the parties' word, somehow, nobody involved in the case committed the fraud, perplexes the court. McZeal's continuing to litigate in Pennsylvania despite these facts strikes the court as bad faith behavior. He attempts to seize on an opportunity created by false and fraudulent amended schedules; an opportunity that, taking his word, he

could not even have foreseen. The court will address the merits of the appeal in further detail below.

Although perhaps a close call, the court, upon balancing the *Poulis* factors, will not dismiss the appeal. *See McGuckin*, 665 B.R. at 128 (finding that the "harsh" sanction of dismissal was not warranted where some factors weighed in favor dismissal and others did not). The court notes several additional reasons for deciding against dismissal.

First, the Third Circuit has "repeatedly stated that its 'preference [is] that cases be disposed of on the merits whenever practicable' and has noted that '[n]ot every failure to follow procedural rules mandates dismissal of the appeal.'" *McGuckin*, 665 B.R. at 128 (quoting *In re Lawson*, 774 F.App'x 58, 59-60 (3d Cir. 2019)).

Second, in the four months since McZeal's filing of his brief, Kilburn has taken considerable steps toward litigating the appeal on the merits. She has ensured an accurate account of the record below was filed with this court, timely filed her brief, and requested denial of McZeal's appeal. She never filed a motion to dismiss.

Third, the delay in filing was six days. Typically, dismissals involve more prolonged delays in filing. *See e.g., In re Great Atlantic & Pacific Tea Company, Inc.*, 850 F.App'x 811 (S.D.N.Y. 2020) (finding grounds to dismiss

where there was a 60-day delay in filing opening brief); *see also Johnston v. Johnston*, 536 B.R. 576 (D.Vt. 2015) (finding grounds to dismiss where there was a 6-month delay in filing brief, and appellant was given an extension). Furthermore, while McZeal is an experienced *pro se* litigant, the court acknowledges the differences in circumstances between a *pro se* party and a party represented by counsel. Additionally, dismissal has been characterized as a "harsh" and "extreme" sanction. *See McGuckin*, 665 B.R. at 127-128. The court agrees that a dismissal for a 6-day delay in filing from a *pro se* party would be harsh.

Fourth and finally, giving McZeal the most charitable analysis of the late filing, the court could conclude that he: (a) genuinely mistakenly filed late, (b) genuinely believes he has a meritorious appeal, and (c) did not file the appeal in bad faith.

Thus, the court, in its discretion, errs in favor of adjudication on the merits, despite McZeal's untimely filing and the surrounding circumstances.

### b. McZeal's appeal will be denied on the merits.

Before turning to a discussion of the merits, the court notes that while Judge Conway's granting of Kilburn's motion for judicial notice is not before the court on appeal, due to its significance in providing an evidentiary foundation for the order granting relief from the stays, the court has reviewed

- 19 -

his decision and finds no error in Judge Conway's application of Rule 201 of the Federal Rules of Evidence.

Turning to the merits of the appeal, McZeal raises the following issues for the court to consider:

1. Whether the Bankruptcy Court erred in granting relief from the automatic stay and co-debtor stay based on an ownership claim derived from a trustee's deed that was rescinded months prior[.]

2. Whether the Bankruptcy Court committed reversible error by failing to make findings of fact or hold an evidentiary hearing[.]

3. Whether the Bankruptcy Court abused its discretion by failing to consider six pieces of documentary evidence offered through a timely Request for Judicial notice[.]

4. Whether the Bankruptcy Court erred by granting stay relief before resolving Appellant's pending Motion for Withdrawal of Reference, Motion for Injunctive Relief, and adversary proceeding[.]

5. Whether the Bankruptcy Court committed reversible error by permitting Movant to proceed based on a fraudulent and conflicting chain of title[.]

6. Whether the Bankruptcy Court's stay-relief order is constitutionally invalid under *Stern v. Marshall*, 564 U.S. 462 (2011)[.]

7. Whether the stay-relief order constitutes a violation of due process[.]

8. Whether the stay-relief order must be reversed because it was procured by fraud upon the court[.]

9. Whether the Bankruptcy Court improperly facilitated forum shopping[.]

(Doc. 5 at 11-12). In contrast, Kilburn argues that:

> a complete discussion of only one issue is necessary to address the points raised in Appellant's brief. Accordingly, the one and only issue on appeal here is whether Judge Conway abused his discretion in granting relief from the automatic stay when the Debtor consented to the relief requested and Appellant presented no evidence to rebut Appellee's prima facie case of cause.

(Doc. 16 at 8). The court agrees with Kilburn.

The decision of whether or not to grant a motion for relief from an automatic stay is a discretionary decision. *See In re Myers*, 491 F.3d 120, 128 (3d Cir. 2007) ("Whether to annul the automatic stay is a decision committed to the bankruptcy court's discretion, and may be reversed only for abuse of that discretion"). Further, bankruptcy courts have been deemed to have "wide latitude in crafting relief from the automatic stay." *Id.* at 129 (quoting *Schwartz v. United States (In re Schwartz)*, 954 F.2d 659, 573 (9th Cir. 1992)). Because the decision is a discretionary decision, the appellate

court reviews that decision under an abuse of discretion standard. *In re Trans World Airlines, Inc.*, 145 F.3d 124, 141 (3d Cir. 1998). An abuse of discretion occurs when a judicial action is "arbitrary, fanciful, or unreasonable, or when improper standards, criteria, or procedures are used." *In re FRG*, 115 B.R. 72, 73 (E.D.Pa. 1990) (citations omitted).

Review of Judge Conway's decision for abuse of discretion reveals no such abuse. 11 U.S.C. §362(d) states:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic stay], such as by terminating, annulling, modifying, or conditioning such stay—
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

Cause is not defined by the Bankruptcy Code. Courts determine whether cause exists on a case-by-case basis. *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay"). The legislative history of §362 establishes that cause can be shown by a "lack of any connection with or interference with the pending bankruptcy

- 22 -

case." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (citing H.R. rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977)).

Here, Judge Conway had sufficient grounds to grant the motion for relief under §362(d)(1). Gibbs asserted that he had no ownership interest in the Laburnum Property and consented to the relief. Therefore, Judge Conway had sound reason to terminate the automatic stay, as Gibbs, the debtor in the bankruptcy case, would not be affected by the California litigation resuming. Nor would Gibbs' estate be affected by the California litigation resuming.  In Judge Conway's own words, "I can't imagine [the Laburnum Property] having any relevance or necessity to the debtor's reorganization in this matter." (Doc. 9-11 at 19-20). Indeed, the purpose of a stay is "to prevent damaging disruptions to administration of the bankruptcy case in the short run." *Taggart v. Lorenzen*, 587 U.S. 554, 565 (2019). Given that Gibbs denied any interest in the Laburnum Property, the lifting of the stay could not result in damaging disruptions to administration of the bankruptcy case, and Judge Conway's decision to terminate the automatic stay was reasonable. Nothing about his determination deviated from proper standards, criteria, or procedures. Thus, Judge Conway's termination of the automatic stay was not an abuse of discretion.

Turning to the co-debtor stay, it logically follows that if Gibbs is not a debtor with respect to the Laburnum Property, then McZeal cannot be a co-debtor. Nevertheless, even if Gibbs does have an ownership interest in the Laburnum Property, and McZeal is a co-debtor, Judge Conway had sufficient reason to grant Kilburn relief from the co-debtor stay.

Beginning with the statute, 11 U.S.C. §1301(c) states:

(c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the [co-debtor stay] with respect to a creditor, to the extent that—

. . .

(2) the plan filed by the debtor proposes not to pay such claim; or

(3) such creditor's interest would be irreparably harmed by continuation of such stay.

Furthermore, in order for a co-debtor stay to apply, there must be an action to collect a consumer debt. *Smith v. Capital One Bank (USA), N.A.*, 845 F.3d 256, 259 (7th Cir. 2016).

Here, in ruling on the co-debtor stay, Judge Conway stated "Given the fact that the property and whatever issues seem to be business related and not personal in any way, I'm not sure if the co-debtor's stay would even apply. But to the extent it does, I'm granting Ms. Kilburn relief as to any co-debtor

stay relating to the debtor's interest, to the extent the debtor has an interest in the California property." (Doc. 9-11 at 19-20).

It is clear that even if Gibbs had an ownership interest, that ownership interest was purportedly as an "investment property." A debt related to an investment property would not constitute a consumer debt. Indeed, Judge Conway correctly noted in a June 27, 2025, hearing that "The fraudulent amendment to Schedule A . . . clearly indicates the property is, quote, investment property, close quote. So, whoever submitted that fraudulent document probably shot him or herself in the foot by making any attempt to make a credible argument under [§]1301 that this is somehow a consumer debt." (Doc. 10 at 19). Thus, the co-debtor stay would not apply, and Judge Conway did not abuse his discretion.

## IV.    CONCLUSION

In light of the foregoing and based on a thorough review of the record below, McZeal's appeal of the Bankruptcy Court's order granting relief from the automatic stay and co-debtor stay will be **DENIED**. An appropriate order shall follow.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 10/16/25

25-818-01

- 26 -